### WILLIAMS vs. BRENT.

APPEAL from the court of the fifth district—
the judge of the 7th presiding.

PORTER, J. delivered the opinion of the
court. This action is instituted on a note by
which the defendant bound himself, jointly
and severally with three other persons, to pay
Samuel Richardson, 2833 dollars and 33
cents.

The plaintiffs, who are the representatives
of Richardson, aver that the defendant yet
owes 879 dollars and 17 cents, with interest at
ten per cent. from the first of February, 1815,
the time the note fell due, until paid.

The defendant pleads:

1st. That although he executed the note in
*solido*, he was, in truth and fact, but surety
for Terrill, one of his co-obligors, and that he
is entitled to every privilege sureties can claim.

2d. That a judgment was obtained by Ri-

Plaintiff who takes a 12 months' bond and sues on it, is not estopped from denying that he took it in discharge of his debt,

The return of the sheriff that a debt is satisfied, does not conclude the creditor, There is no difference in the effect of a sale made to a stranger, & that made to the defendant in execution.

Judgment against one debtor in *solido*, is no bar to recovery against a co-debtor.

A 12 months bond is not a payment of the debt on which execution issued Nor does it operate a novation.

chardson, in his life time, against Terrill, the principal debtor, on which judgment property was seized and sold, to satisfy the debt, on twelve months credit. That, owing to the sureties not being good, and the slaves being *run off,* the judgment was not paid. But that, notwithstanding, the respondent is discharged, as the sheriff and his sureties are responsible.

The court below was of opinion, that the sale of the property on twelve months' credit was a complete satisfaction of the judgment rendered against Terril; and that the satisfaction of this judgment discharged the defendant from all liability.

The execution which issued on the judgment, was in the usual form, and the return on it is as follows: " satisfied by the sale of the " adjoining described property, at one year's " credit, for the sum of $1500."

It is shewn that Terrill was the principal debtor, and that although, as to the obligee, the respondent and his co-obligors, were bound in *solido,* yet, as between them and Terrill, they were but sureties.

It appears from the evidence appearing on the record, that the property sold by the sheriff did not belong to Terril, the defendant, but to

Brown, one of the co-obligors, by whom it was voluntarily surrendered for that purpose.

On these facts, a question of considerable importance is presented. The case has been elaborately and ably argued, and it has been intensely considered by us. The judgment we are about to pronounce is the result of our best deliberations on the subject. It would be uncandid in us, if we did not state that the conclusion to which we have come, is not free even in our own minds, from objections; but we see much less difficulty on that side of the question, than we do on the other.

Before we approach the main point in the cause, it will be proper to clear from around it every thing which prevents the real question in dispute from being nakedly and distinctly considered.

We go along with the counsel for the appellant, in a concession, which follows from the whole tenor of the argument he addressed to the court; that the act of the legislature providing for the sale of property on twelve month's credit, considered merely as an extension of time, and as a means of enforcing the obligation of the debtor, is not unconstitutional. And if we were of a different opinion,

Western Dis,
Sept, 1828,

WILLIAMS
*vs,*
BRENT,
this case would not present that question, for the plaintiffs having accepted the bond and received part of the debt due to them from a sale made under it, have waved the objection. We also concur with him in his position, that if the act be constitutional, so far as it extends a remedy, and unconstitutional in substituting one debt for another, that their acceptance cannot be considered as an abandonment of the latter objection. They must be presumed to have taken the bond for the purposes for which they could have been legally compelled o receive it.

We also agree with him in the soundness of the proposition, that the return made by the sheriff in the suit of *Richardson* vs. *Terrill,* of the judgment being satisfied, cannot enlarge or diminish the rights of the parties; because he has returned *how* it was satisfied; and if that which he considered a satisfaction, be not in truth a discharge of the judgment, then most certainly his conclusions cannot render it so. For that would be to make him a judicial, not a ministerial officer, and to substitute his opinions, for the commands and the wisdom of the law.

It is also true, as contended by the appel-

lants, that though the sheriff is the agent of the plaintiff, he is also the agent of the law, and that he had no choice in his selection. But it is equally true, as urged by the appellee, that the act of that officer, in taking out execution on the twelve month's bond, and seizing property under it, must be considered as the act of the plaintiff in execution; because the law has not authorised its officers to take out execution unless requested so to do, by those in whose favour judgment is rendered. The appellee, therefore, has every advantage from this act of the sheriff, that he would have had, if it had been done by the appellant.

But we cannot assent to the proposition of the appellant, that the circumstance of the property sold, having belonged to one of the co-obligors, and not to the defendant in execution, and having been bought by the owner, can make any difference in the effects of the sale. If a sale for a twelve-months' bond extinguishes the judgment and debt, then we are unable to recognise any difference between a sale to a stranger—a co-debtor in *solido*— or to the defendant in execution. The principle on which such a consequence can be deduced, rejects all arguments drawn from the

Western Dis,  person to whom the sale is made; and though
*Sept .1828.*

Williams
*vs,*
Brent,

it may be true, that on an execution the sheriff is not authorised to seize the property of a stranger, even by his consent, the acceptance of the bond in this case given by the plaintiffs, waves all objection growing out of that circumstance.

It has been contended by the appellee, that the debt of Terrill on the bond merged in the judgment. This argument has been repelled by the other side, as resting on principles peculiar to the common law, and unknown to our jurisprudence. Whether a debt at common law is not considered, for certain purposes, as merging in a judgment, it is of course immaterial for us in this country to enquire. It is equally immaterial, whether the same consequence does not follow the same proceeding here by our own law. This is an action against one of several debtors bound in *solido,* or jointly and severally; and in regard to persons so bound, it is a well settled principle in our jurisprudence, that judgment against one, is no bar to recovery against another. That nothing but actual satisfaction from one of the creditors, will prevent judgment and execution against the person legally

bound with him. *R. code, lib.* 8, *tit.* 41, *l.* 28,
*Poth. on ob.* 270, 271, 272. *C. code,* 278, 103, 104.

We give an entire assent to the proposition of the appellant, that the bond cannot be considered as *a payment.* Although it is true, that the obligation for the payment of one thing, may be discharged or paid by another, when the parties so agree; this principle suffers an exception, when the thing so given and received, is the obligation of another *to pay*; in that case the extinction of the first obligation is produced by novation; and this brings us to the important question in this cause, whether there was not a novation of the original debt due by Terrill. If there was, it is extinguished to his creditors in *solido.* 2 *n. s.* 144, *Civil code* 296, *art.* 182.

Among the different modes prescribed by our law, by which novation is produced, is that " where a new debtor is substituted to the old one, who is discharged." The appellee contends, that the sale of the defendant's property in execution, for the price of which a bond at twelve months is taken, comes within the provision just cited. A new debtor is substituted. The law, he urges, contemplates it

Western Dis.
*Sept. 1828.*

WILLIAMS
*vs.*
BRENT.

shall be a discharge, and the creditor's assent to its being so, is shewn as completely, as if it made expressly a part of his agreement that he would take a bond at twelve months, if the debtor's property would not sell at two thirds of its appraised value. The law was in force at the time of the contract, and the parties must be presumed to have contracted in relation to it. He further insists that if this implied assent is not strong enough to charge the plaintiffs, there is still stronger evidence in the case before us—their acceptance of the bond, and their attempt to enforce it.

To this reasoning the appellants have replied: That the law did not contemplate there should be an extinction of the original obligation. It merely intended it as one of the means of satisfying the creditor. If it meant any thing more, it would be unconstitutional—*first*, in making something else than gold and silver a payment of a debt in money—*second*, in violating the obligation of a contract. That their consent was never given to any such change—neither impliedly, nor expressly: for the agreement was entered into in 1813; and the act of assembly which, it is said, produces novation, was not passed until the year 1817

The contract on which this suit was brought, was, it is true, made in the year 1813, and the act relied on became a law in the year 1817 But at the time the agreement was entered into, an act of the legislature was in force, which required property that did not bring two thirds of its appraised value, to be sold on twelve months' credit, the purchaser giving bond and security as provided by the act of 1817. The only change which this last law has introduced, is the salutary one, that instead of selling the property seized under execution, for the payment of the bond under appraisement, and at a credit, it must be sold for cash. This modification is favourable to the creditor ; it enlarges, instead of restraining, his rights, and consequently deprives him of the protection which the constitution might afford, if the statute was subsequent to the contract, and impaired it.

We have then, on the constitutionality of the law presented to us, the very same point which lately exercised the learning and the wisdom of the supreme court of the United States, aided by as full and able argument as any legal question ever received since the establishment of our government. A majority of that court

Western Dis,
*Sept*, 1828,

WILLIAMS
*vs*,
BRENT,

were of opinion, that a law in force at the time a contract was made, could not be considered as impairing its obligation.

We could not add to the reasoning on which that conclusion was obtained: it would be useless to repeat it. It is certainly not free from difficulty; but it appears to us freer from it, than the other interpretation. It has our assent; and we may briefly remark—that, as the prohibition in the constitution of the United States against the states passing any law impairing the obligation of a contract, is conceded to mean the *legal* obligation; it would seem to follow, the legal obligation of a contract is, whatever the law in force at the time of making it, compels the parties to do, or not to do; and that consequently it cannot be correctly said that such a law impairs the obligation of the contract. That the laws of every country, in giving the right to enforce agreements, may state to what extent they will permit them, and that *the whole legal obligation is to be sought, as well in the law which limits the right expressed on the face of the contract, as that which authorises it to be at all enforced.*

The plaintiffs, therefore, cannot, in our judg-

ment, successfully contend that the law is un-

constitutional. Their ancestor knew at the
time he made the agreement, that if the obligor
did not comply with it, his property must be
sold at twelve months' credit, if it would not
bring two thirds of its appraised value. He
knew, too, that law required he should accept
the bond, and try to enforce it. If this law re-
lates alone to the remedy, no question can
arise as to its constitutionality. If it is to be
regarded as a modification of the contract as
expressed by the parties, they must be under-
stood to have contracted in relation to such
modification, and must be bound by it.

If, therefore, the statute had declared, that a
bond taken in pursuance of its provisions,
should discharge the judgment and the origin-
al debt, we are unable to say that such a law
would be unconstitutional, in regard to any
debts contracted after its passage.

But has it done so? This is the main diffi-
culty in the cause. The statutory provisions
directly applicable to the point, will be found
in 2 *Martin Dig.* 164, 11; and in the act of
1817, p. 36, §15. The last directs that the
sheriff shall return the manner he has executed
the writ of *fieri facias.* The first contemplates'

Western Dis.
*Sept.* 1828,
‿‿‿~‿‿‿
WILLIAMS
*vs.*
BRENT.

that satisfaction may be entered on the docket of judgment, and provides for it being done, whenever it shall appear by the sheriff's return, or the acknowledgment of the creditor or his attorney, that it is discharged. In neither of these laws, nor in any other of our statutes, is it declared, that such shall be the effect of a sale at twelve months' credit, though it is true that no difference is expressly made between such a sale, and one for cash.

But does not a distinction exist in the different results produced by the sale for cash, and one on a credit, which it required no positive law to point out. When made for the first, the creditor has obtained that which he contracted for. He has, of course, obtained satisfaction, as far as it is possible the law or the debtor, could furnish it. No express declaration was therefore necessary to make it such; it is the necessary consequence of the creditor receiving that which he stipulated for. But when the thing given to the creditor is not that which he stipulated for, although the law might make it a satisfaction, *it can never be presumed,* it intended to do so. Because it is interfering without any just necessity in the contracts of individuals, and discharging

the obligation by something different from that for which the parties contracted.

These observations as to there being no necessity for any declaration on the part of the law-maker, that the receipt of the thing promised should discharge the obligation; and that such an express declaration is required where something else is given, derives great, (and if the subject were not one on which such a difference of opinion is said to exist in the profession) we would almost say unanswerable force, from the analogies furnished by the principles of our law in relation to the extinguishment of obligations by agreement between the parties. It is a well understood principle of our jurisprudence, that the discharge of an obligation is never presumed to be made in any other manner, than by the giving of that which the debtor has promised; and we have an article of our code which explicitly declares, that the obligation by which a debtor gives to his creditor another debtor, does not discharge him who was originally bound, unless the creditor *has expressly* declared that he intends to discharge him. If then an express declaration be necessary on the part of the creditor to effect novation in the

WesternDis.
*Sept.*1828.

WILLIAMS
*vs,*
BRENT,

case just put. If it cannot be presumed, does not the same principle forbid us to presume the legislature intended it? Does not every reason which forbids it being inferred, exist in the one case, as well as the other? If there be a difference, we are unable to perceive it. We have already said the law was not unconstitutional, because being in force at the time of the contract, the creditor must be presumed to have assented to it, or in other words, that the contract must receive the same construction as if the provisions of the law had been incorporated into, and made a part of it. Now suppose it had been inserted in this contract, that if the debtor's property did not sell on execution, for two thirds of its appraised value, it should be sold at twelve months' credit; and that the bond of the purchaser should be delivered to the creditor, such a stipulation would not have novated the original debt, nor discharged the debtor. If it would not, the implied consent of the creditor to a law containing these stipulations, cannot have a greater effect.

We conclude, therefore. on this branch of the subject, by saying, that as the legislature have not declared that a twelve-months' bond

shall be a discharge of a debt, that the credi- Western Dis,
tor, in case he is unable to make the money on
the bond, may resort to his original judgment·

*Sept.* 1828,

WILLIAMS
*vs.*
BRENT,

In this particular case, the decision works
no injustice and violates no equity. One of the
co-sureties voluntarily presented his property
to be sold for the satisfaction of a judgment
rendered against his principal. This property
he bought in, and then, in the language of the
testimony taken on the trial, *ran it off.* No
injury, therefore, has been sustained by the
person whose property was sold, and the de-
fendant's equity must depend on his. But,
although this case offers no proof of loss sus-
tained, we are aware that under the operation
of the principles we have established, other
contests may arise on the consequences which
may follow a sale made to a stranger. When-
ever they do come up for decision, unless one
or other of the parties has violated the law, or
neglected its provisions, the case will not pre-
sent the equitable claims of the debtor alone:
those of the creditor will require an equal
share of attention. When the debtor shall
urge: " I contracted at a time when I had rea-
son to believe I could perform my engagement.
Circumstances beyond my controul prevented

Western Dis,
Sept, 1828,

WILLIAMS,
vs,
BRENT,

me doing so. I did every thing in my power to repair the injury. I surrendered my property in execution. It has been sold to an amount sufficient to pay the debt. If it has failed to do so, the fault is not mine, but my creditor's, who resorted to a remedy that he knew might terminate, not in a sale for cash, but on a credit. If I am responsible for the insolvency of the purchaser, I may be made so again on the next sale, and thus the whole of my property may be wrested from me." May it not be answered, with equal truth, and greater strength on the part of the creditor: " I contracted with you in the firm belief you would comply with your engagement. On the faith of it, I have become bound myself to others. I gave you property to the full value of the money you promised to pay me; and now, because you have violated your contract, you wish to discharge it by that which yields me nothing. Thus I am to be the sufferer, without any fault of mine, excepting my confiding in your good faith. The consequences you deprecate, as to the constantly recurring sales of your property, might be obviated by either permitting a portion of it to be sold for cash, or by buying it in yourself; as you take

the benefit of an extension of credit, you ought
to bear the burthen, and run the risks atten-
dant on it." We know not how those con-
flicting appeals to equity might strike the minds
of others, to us it appears the weight of them
is decidedly with the creditor, and for this
main reason—that all the misfortunes of the
debtor have proceeded from his own act, and
that he who is the cause of a state of things
by which one or other must lose, has no rea-
son to complain if the loss is fixed on him
with whom it originated.

It has been used as an argument against
the construction we have adopted, that the law
has pointed out no means of enforcing the ori-
ginal judgment, after the sheriff has endorsed
the execution satisfied by a twelve-months'
bond. But this difficulty arises solely from
the sheriff giving a greater effect to the sale,
by his return, than it is entitled to in law. He
should, in obedience to the act of 1817, when
he sells for any thing but cash, state in what
manner he has executed the writ, without
stating what consequence follows it.

One or two minor questions remain.

The answer avers the responsibility of the
sheriff for taking defective security, and that

he should be pursued before recourse is had on the defendant. Admitting this objection to be sound, on which we do not express an opinion, there is no evidence on record that establishes the insolvency of the surety at the time he was received by the sheriff.

It has been further urged, that whatever may be the general principle, this case presents an exception, because no proof has been given that the money might not be made from the principal and surety on the twelve-months' bond; and that this property must be exhausted, before the original debtor is resorted to· This is, perhaps, true; but the answer does not plead the exception; but acknowledges their insolvency, and of course dispensed with the creditor proving it.

It is, therefore, ordered, adjudged, and decreed, that the judgment of the district court be annulled, avoided and reversed: And proceeding here to give such judgment as ought to have been given in the court below—it is ordered, adjudged and decreed, that the plaintiffs do recover of the defendant the sum of eight hundred and seventy-nine dollars and seventeen cents, with interest at ten per cent.

from 1st February, 1815, until paid; and costs <span>Western Dis, *Sept.* 1828,</span>
in both courts.

*Brownson* for the plaintiff—*Simon* for <span>WILLIAMS *vs,* BRENT,</span>
the defendant.